IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-189-FL

| | |
|---|---|
| JOYCE ROBINSON for<br>WYKIA WELLS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) **MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>) |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. The action seeks judicial review of the Commissioner's denial of the Plaintiff's application for Supplemental Security Income. After a thorough review of the record and consideration of the briefs submitted by counsel, this Court recommends denying the Plaintiff's Motion for Judgment on the Pleadings [DE-12], and granting the Defendant's Motion for Judgment on the Pleadings [DE-15].

## STATEMENT OF THE CASE

The Plaintiff filed an application for Supplemental Security Income on August 13, 1996. In a determination issued on October 24, 1996, the Plaintiff was found to be disabled effective August 2, 1996. At that time, it was found that the Plaintiff suffered from organic mental disorder and speech and language delays, which met the criteria of one of the Listings of Impairments.

On July 25, 2000, the Defendant found that the Plaintiff's disability had ceased in

June, 2000. The Defendant never received the cessation notice dated July 25, 2000, due to difficulty with delivery of mail to her area. This fact was confirmed by a report from the United States Postal Service in July, 2002. On June 3, 2002, an additional notice of overpayment of benefits was sent to the Plaintiff's custodian.

The Plaintiff filed a new application for benefits on June 26, 2002. The Defendant reinstated the Plaintiff's appeal of her original cessation, leading to a hearing held before a disability officer. On July 8, 2003, the hearing officer determined that the Plaintiff was no longer disabled due to medical improvement. According to the Defendant, the Plaintiff's disability ceased on July 1, 2000. The Plaintiff requested an administrative hearing. A hearing was held before an Administrative Law Judge (ALJ), and a decision was issued denying the Plaintiff's claims on August 25, 2005. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. The Plaintiff timely requested review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## COURT'S DISCUSSION

### I.     The Standard of Review

The scope of judicial review of a final decision regarding disability benefits under Social Security Act, 42 U.S.C. § 405(g), is limited to determining if substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat

less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). The court may not substitute its judgment for that of the Commissioner if the Commissioner's decision is supported by substantial evidence. See Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

To be eligible for childhood disability payments, a claimant must beet the definition of disability set forth at 42 U.S.C. § 1382c(a)(3)(C), which provides:

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

The Commissioner has set forth a framework to be utilized in implementing this statutory standard. See 20 C.F.R. § 416.924 et seq. At the first step of the evaluation process, the ALJ must consider whether the claimant has engaged in substantial gainful activity during the relevant period. Id. If so, then the claim must be denied. Id. At the second step, the claimant will be deemed not disabled if the claimant does not have a "severe" impairment, which is defined as one which causes more than minimal functional impairments. Id. If the claimant has such an impairment, she will be presumed disabled if she meets a 12 month

3

duration requirement and her impairments are included in, or medically or functionally equivalent in severity to, an impairment specified in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1.

After it is determined that a claimant meets the definition of disability, the law requires that the claimant's condition be periodically evaluated to determine if she remains eligible for childhood disability benefits. 42 U.S.C. § 1382c(a)(3)(H)(ii); 20 C.F.R. § 416.989. The methodology used in conducting such a continuing disability review is outlined at 20 C.F.R. § 416.994a. It involves a determination as to (a) whether or not there has been medical improvement in the impairments that were the basis for the prior finding of disability; (b) if so, whether those impairments continue to meet or equal the conclusive disability criteria set forth in the Commissioner's regulatory Listing of Impairments; and (c) if not, whether the claimant is currently disabled in accordance with the standards set forth above. Id.

In this case, the Plaintiff alleges in her brief that the ALJ committed error by: (1) utilizing an unclear legal standard; (2) failing to properly evaluate the opinion evidence; and (3) failing to consider the entire record. For the reasons set forth below, the undersigned Court disagrees.

## II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the evaluation process set forth at 20 C.F.R. § 416.924 et seq. The ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date. The ALJ then determined that although the Plaintiff had "severe" impairments, her borderline intellectual functioning, attention deficit hyperactivity disorder, learning disorder, and schizophrenia did

4

not meet or medically equal the severity of a listed impairment. According to the ALJ, the Plaintiff did not have an extreme limitation in any domain of functioning or a marked limitation in two domains of functioning. Finally, regarding the Plaintiff's credibility, the ALJ found that the Plaintiff's subjective complaints were credible only to the extent that they were supported by the evidence of record as summarized in the ALJ's decision.

## III. The Plaintiff's Testimony at the Administrative Hearing

The Plaintiff testified at an administrative hearing held on June 14, 2005. (R. 41). At the time of the hearing, the Plaintiff was eleven years old and about to begin the sixth grade as a student at Greenwood Middle School. (R. 44). The Plaintiff said that she was removed from her regular class for "other classes" roughly every other day after lunch. (R. 45). According to the Plaintiff, her favorite course at school was physical education where she enjoyed long distance running. (R. 46). When asked by the ALJ, the Plaintiff said that she rode her bicycle while at home. (R. 46-47). The Plaintiff testified that she never saw the school nurse for health problems while she was at school. (R. 46). The Plaintiff said that she rode the bus every day. (R. 47). She said that she had never been disciplined while riding the bus. (R. 48). The Plaintiff testified that she had, however, received notes to bring home describing issues that she experienced while at school. Id. Finally, when asked by the ALJ, the Plaintiff said that she dressed herself, brushed her own teeth, fixed her own hair, and could prepare her own cereal for breakfast. (R. 49).

## IV. Ms. Robinson's Testimony at the Administrative Hearing

The Plaintiff's care giver, Ms. Robinson, also testified at the administrative hearing. (R. 51). Ms. Robinson said that she was the Plaintiff's cousin but had legal custody of the Plaintiff. (R. 52-53). When asked about the special programs provided to the Plaintiff at

5

school, Ms. Robinson said that all of the Plaintiff's work was "read to her" for the purposes of testing. (R. 52). Ms. Robinson said that the Plaintiff did well enough at school to be promoted to the sixth grade. (R. 55). Ms. Robinson said that while at home the Plaintiff was forgetful and had problems following directions. Id. The Plaintiff also did not get along well with her cousins. (R. 56). Ms. Robinson further testified that she believed that the Plaintiff had issues regarding the subject of sex. (R. 57). According to Ms. Robinson, the Plaintiff engaged in extensive masturbation, touched men who visited the Plaintiff's home in an inappropriate fashion, and told unusual stories while at school. (R. 56-57). Ms. Robinson said that the Plaintiff was medicated for attention deficit hyperactivity disorder. (R. 58). The medication resulted in the Plaintiff being "more focused," but had side effects of mood swings, constipation, headaches and dizziness. Id. Ms. Robinson further testified that the Plaintiff had issues with pretending to experience pain in order to get attention from Ms. Robinson as well as health care providers. (R. 59). Ms. Robinson went on to testify that the Plaintiff had a problem with bladder control, hurting herself, and anger episodes. (R. 59-61).

## V. Analysis of the Plaintiff's Arguments

### A. The Plaintiff's argument that the ALJ erred by utilizing an unclear legal standard

In her first argument, the Plaintiff contends that the ALJ erred by utilizing an unclear legal standard in evaluating the Plaintiff's claim of continuing entitlement to childhood disability payments. Specifically, the Plaintiff contends that the ALJ inappropriately applied the entitlement criteria of an initial application case instead of the entitlement criteria of a cessation case. Such an error on the ALJ's part, in the opinion of the Plaintiff, justifies a

6

remand for further proceedings. This Court finds the Plaintiff's first argument to be unpersuasive.

The law requires that the child's condition be periodically evaluated to determine if she remains eligible for childhood disability benefits. 42 U.S.C. § 1382c(a)(3)(H)(ii); 20 C.F.R. § 416.989. The methodology used in conducting such a continuing disability review is outlined at 20 C.F.R. § 416.994a. It involves a determination as to (a) whether or not there has been medical improvement in the impairments that were the basis for the prior finding of disability; (b) if so, whether those impairments continue to meet or equal the conclusive disability criteria set forth in the Commissioner's regulatory Listing of Impairments; and (c) if not, whether the claimant is currently disabled in accordance with the standards set forth above. Id.

After reviewing the record and the briefs submitted by counsel, it is the opinion of this Court that a review of the ALJ's decision as a whole reveals that he considered and discussed every issue relevant to the Plaintiff's claim of continuing entitlement to childhood disability payments. The ALJ began his analysis by evaluating whether or not there had been a medical improvement in the Plaintiff's impairments since her prior award of benefits. (R. 19-23). The ALJ's decision proceeded to a determination of whether or not the Plaintiff continued to meet or equal the Listing she was found to meet or equal at the time of the comparison point decision of October 24, 1996. (R. 23). Finally, the ALJ concluded by determining the Plaintiff's disability status based on a review of the record and an application of the relevant regulations. (R. 23-26). The ALJ found that the Plaintiff was not longer disabled as defined in 42 U.S.C. § 1382c(a)(3)(C).

In support of her argument, the Plaintiff relies on the ALJ's statement in his decision

that the Plaintiff had "not been under a 'disability' at any time from the alleged onset date through the date of this decision." (R. 27). In isolation this statement might support such an argument, however, when viewed in the context of the ALJ's entire decision, the statement appears not to be material. As such, in the opinion of this Court, a remand to the Commissioner for further proceedings as requested by the Plaintiff is not necessary.

### B. The Plaintiff's argument that the ALJ erred by failing to properly evaluate the opinion evidence

In her second argument, the Plaintiff contends that the ALJ erred by failing to properly evaluate the opinion evidence. Specifically, the Plaintiff takes issue with the ALJ's evaluation of the opinions of Dr. Lee Ann Taggart and Dr. Nancy Vogel in the ALJ's determination that the Plaintiff was not disabled. According to the Plaintiff, a remand to the Commissioner for further proceedings is required. This Court disagrees for the following reasons.

Under the Commissioner's regulations, controlling weight is given to the opinion of a treating source on the issues of the nature and severity of an impairment if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1995). A treating source's opinion does not automatically become the opinion of the ALJ. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

With regard to the opinion of Dr. Taggart, the evidence is limited to a one time

8

consultative examination report. This Court does not believe that Dr. Taggart qualifies as a "treating physician" for the purposes of the ALJ's consideration of her opinion regarding the Plaintiff's condition in light of the limited nature of the Plaintiff's relationship with Dr. Taggart. See 20 C.F.R. § 416.927(d)(2). Additionally, the substance of the consultative examination report submitted into evidence does not provide significant support to the Plaintiff's case. Specifically, Dr. Taggart observed that there were no deficits in the Plaintiff's "attentional capacity," and further observed that the Plaintiff had normal euthymic affect, intact memory, and no signs of destructibility. (R. 567, 570-573). Dr. Taggart further reported that the Plaintiff was friendly, cooperative, and diligent; that her tested IQ fell within the borderline to average range; and that her achievement scores were within the low average to average range. (R. 570-573). Finally, although Dr. Taggart opined that the Plaintiff had some problems with comprehension and indications of a thought disorder and should continue with her current health treatment, Dr. Taggart's report is absent of any findings that would establish the level of disability required by the Commissioner's regulations. Id.

Next, regarding the Plaintiff's argument as it pertains to the opinion of Dr. Vogel, this Court is equally unpersuaded. The Plaintiff relies on a report by Dr. Vogel dated May 17, 2005. Specifically, the Plaintiff cites a statement by Dr. Vogel that the Plaintiff was "one of the most severely disturbed children that [she had] ever treated." (R. 567). However, in light of Dr. Vogel's report as a whole, the statement cited by the Plaintiff has little, if any, probative value. In the May 17, 2005 report, Dr. Vogel was specifically requested by the Plaintiff's counsel to evaluate the Plaintiff's impairments in accordance with the childhood disability standards set forth in the regulations. (R. 565-568). Dr. Vogel indicated in her

9

report that the Plaintiff did not have the extreme limitations in one area or the marked limitations in two areas of functioning that is required by 20 C.F.R. § 416.926a for a finding of disability. (R. 567). Dr. Vogel's report further provided that the Plaintiff's intellectual functioning was in the borderline range, with a tested full scale IQ of 84. Id. Finally, according to Dr. Vogel, the Plaintiff's psychological impairment was attenuated by medication or psychological support. Id.; see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (providing that if a condition can be reasonably controlled by medication or treatment it is not disabling).

### C. The Plaintiff's argument that the ALJ erred by failing to consider the entire record

In her third argument, the Plaintiff contends that the ALJ erred by failing to consider the entire record. Specifically, the Plaintiff argues that the ALJ did not adequately address the Plaintiff's claimed schizophrenia, mental retardation, and urinary function issues. This Court finds the Plaintiff's third argument to be unpersuasive.

As stated in the Plaintiff's brief, Dr. Vogel diagnosed the Plaintiff with schizophrenia, an impairment not found by any of the Plaintiff's other medical providers. In the opinion of this Court, the ALJ's consideration of the Plaintiff's schizophrenia diagnosis did not constitute error. The ALJ included the Plaintiff's schizophrenia diagnosis in his comprehensive summary of the medical evidence of the record. (R. 21-22). The ALJ further considered the Plaintiff's schizophrenia diagnosis in his finding as to the Plaintiff's severe combination of impairments, and in his further finding as to the issue of whether the Plaintiff's impairments met or equaled the requirements of the Listing of Impairments. (R. 23, 26-27). Next, with regard to the Plaintiff's claim of mental retardation, it is clear in his

decision that the ALJ thoroughly addressed the issue of the Plaintiff's limited mental functioning. (R. 18-27). The record further reflects that the Plaintiff was never diagnosed with mental retardation by any medical provider. Finally, it is clear from the ALJ's decision that he adequately considered the Plaintiff's claim of urinary incontinence. Id. The Plaintiff's urinary incontinence was addressed by the ALJ in his recitation of the testimonial evidence. (R. 23). The issue was further addressed by the ALJ in his analysis of the Plaintiff's functioning regarding her ability to provide self-care. (R. 25).

## CONCLUSION

Because there is not substantial evidence to support the findings of the ALJ, the Court **RECOMMENDS** that the Plaintiff's Motion for Judgment on the Pleadings [DE-12] be **DENIED**, and the Defendant's Motion for Judgment on the Pleadings [DE-15] be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

This 27th day of April, 2007.

DAVID W. DANIEL
United States Magistrate Judge