IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-189-FL

| | |
|---|---|
| JOYCE ROBINSON for W. W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) ORDER |
| Commissioner of the Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the court on parties' cross-motions for judgment on the pleadings (DE ## 12, 15). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge David W. Daniel entered a memorandum on April 27, 2007, recommending that the court deny plaintiff's motion, grant defendant's motion, and uphold the Commissioner's decision finding that plaintiff's disability ceased to meet criteria set forth in the Listing of Impairments as of July 1, 2000. Plaintiff timely filed objections to the memorandum and recommendation (hereinafter "M&R") on May 4, 2007. In this posture, the matter is ripe for ruling. For the reasons that follow, the court affirms the decision of the Commissioner.

STATEMENT OF THE CASE

In an order dated October 24, 1996, plaintiff, a minor, was awarded Supplemental Security Income ("SSI") benefits, retroactively effective as of August 2, 1996. At that time, plaintiff suffered from an organic mental disorder (chronic brain syndrome) and speech and language delays of severity sufficient to meet the criteria of section 112.02 of defendant's Listings of Impairments.

On July 25, 2000, defendant's routine review of plaintiff's disability revealed that plaintiff's medical condition had improved, and plaintiff no longer met the disability criteria of section 112.02. At that time, defendant mailed plaintiff notice of the impending cessation of SSI benefits.

Plaintiff never received such notice, however, due to problems with postal delivery in her area. These delivery problems were confirmed by a report from the United States Postal Service in July 2002.

Despite the determination that plaintiff no longer qualified for SSI benefits, defendant did not stop sending benefit payments to plaintiff. Plaintiff's first actual notice of the July, 2000 benefits cessation determination came in June, 2002 when defendant sent a notice of overpayment of benefits. By that time, defendant had overpaid plaintiff by $7,402.80.

Plaintiff filed a request for waiver of overpayment and also requested reconsideration of the benefits cessation determination. Due to the prior lack of notice, defendant treated plaintiff's reconsideration request as a timely appeal of the benefits cessation determination and, on July 8, 2003, a hearing was held to evaluate plaintiff's alleged medical improvement.

The hearing officer confirmed plaintiff's medical improvement and found that her disability had ceased to meet listing criteria as of July 1, 2000. Plaintiff then requested an administrative hearing. A hearing was held before an Administrative Law Judge ("ALJ"), and a decision was issued on August 25, 2005, denying plaintiff's claims. The Appeals Commission denied review, making the ALJ's decision the final decision of the Commissioner. The plaintiff timely requested review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

In an M&R filed April 27, 2007, Magistrate Judge Daniel analyzed and rejected all of plaintiff's arguments and recommended that the Commissioner's decision discontinuing benefits

2

after July 1, 2000, be upheld. Plaintiff timely filed objections to the M&R, challenging the findings and conclusions of the magistrate judge on five separate bases.

## STANDARD OF REVIEW

The court's review is limited to determining whether the findings of the Commissioner are "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is that "which a reasoning mind would accept as sufficient to support a particular conclusion," consisting of "more than a mere scintilla of evidence but . . . somewhat less than a preponderance." Id. "Ultimately, it is the duty of the administrative law judge reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Id. Even if the court disagrees with Commissioner's decision, the court must uphold it if it is supported by substantial evidence. See id.

In addressing plaintiff's objections to the magistrate judge's recommendation, the district court reviews *de novo* those findings or conclusions of the recommendation to which specific objections have been made. 28 U.S.C. § 636(b)(1)(C); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

A.   ALJ's analysis of plaintiff's current disability within the framework of 20 C.F.R. § 419.994

The law requires that a child's continued eligibility for disability benefits be periodically reviewed. If such a review reveals that a child's disability no longer rises to the level of the criteria in the Listing of Impairments, benefits may cease. The cessation of benefits secondary to such a

3

finding is subject to appeal.

The disability review process involves a three step analysis. First, the reviewing party must determine "whether there has been medical improvement in [a child's] impairments." 20 C.F.R. § 416.994(a)(1). If there is no medical improvement, absent certain limited exceptions, the child is deemed still disabled. Second, in the event of some medical improvement, the reviewing party determines whether, despite that improvement, the child's impairment still meets or equals "the severity of the listed impairment that it met or equaled before." 20 C.F.R. § 416.994(b)(2). Third, if there is medical improvement and the child's disability no longer meets the prior listing, the reviewing party determines whether the child is nonetheless currently disabled due to some combination of factors or by analogy to a different listed disability. 20 C.F.R. § 416.994(b)(3).

Disability criteria in the third step may be satisfied if: 1) the child's disability is severe; and either 2) the child's impairment meets or medically equals the severity of any listed impairment; or 3) the child's impairment "functionally equals" one of the Listings of Impairment. 20 C.F.R. § 416.994(b)(3)(iii).

Plaintiff claims that the ALJ committed legal error by failing to properly consider the second element of the third portion of the benefits cessation test. Because his opinion did not explicitly address the possibility that some combination of plaintiff's various conditions "meets or medically equals" one of the listed disabilities, plaintiff contends, this court has insufficient information about the ALJ's decision making process to review his administrative decision. The plaintiff's argument fails for several reasons.

First, as noted by defendant, "issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir.

4

1996). Plaintiff failed to raise the "meets or equals" argument in her motion submitted to Magistrate Judge Daniel, and "the purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court[.]" Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir, 2000).

Second, even if not waived, plaintiff's argument fails because the ALJ correctly applied the relevant law and because his determination is supported by substantial evidence.

In crafting his opinion, the ALJ properly identified the legal standard by which cessation determinations are made. (Tr. at 19-20). He then provided several pages of relevant factual background, and considered numerous salient facts in light of the relevant legal framework. (Tr. at 20-26). He determined that plaintiff no longer meets or equals listing 112.02, the original listed impairment for which she received SSI. (Tr. at 23). And, based upon his analysis, he determined that plaintiff also "does not have an impairment or combination of impairments, which meets, medically equals *any* listing, or functionally equals *any* listing[.]" (Tr. at 26)(emphasis added).

Although the ALJ did not specifically compare plaintiff's suite of medical and psychological conditions to any listing other than 112.02, it is clear that he engaged in a thorough consideration of the record, and that he understood and applied the relevant law. Logically, the ALJ need not and indeed is not reasonably capable of engaging in extensive written analysis of every possible disability listing; this court finds no error of law in his failure to do so.

B.     ALJ's consideration of Dr. Vogel's opinion

Plaintiff's next argument is that the ALJ failed to explain the weight he assigned to the medical opinion of Dr. Vogel, one of plaintiff's treating sources. Plaintiff is correct that the ALJ

5

failed to provide this required piece of information, but plaintiff fails to persuade this court that such a failure on the part of the ALJ is material or supports a remand or reversal.

20 C.F.R. § 416.927 provides guidelines for ALJs assigning weight to expert medical opinions in disability determinations, and § 416.927(d)(2) indicates that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating sources' opinion." The regulations make no mention, however, of remedy for failure to include such reasons in the ALJ's opinion, and so we consider the reasonable impact of the ALJ's failure in the context of the current review.

The ALJ's failure to explicitly describe the weight he assigned to Dr. Vogel's opinion has no material impact on this decision because it is apparent on the face of the written decision that the ALJ did consider Doctor Vogel's opinion and did incorporate that opinion into his final decision. Dr. Vogel's opinion is explained in detail in the "Evaluation," section (Tr. at 22), and her diagnoses impact the ALJ's "Findings." (Tr. at 27). Acknowledging Dr. Vogel's finding that plaintiff suffers from schizophrenia, (Tr. at 26), the ALJ nonetheless reached a final conclusion that plaintiff is no longer disabled.

"It is the duty of the ALJ evaluating the case, not the federal courts, to make findings of fact and to resolve all evidentiary conflicts." Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993). Here, where it is apparent that the ALJ considered the relevant evidence in the record, this court will not reverse his decision for failure to fully explain the weight he gave to each individual document within that record.

C. ALJ's determination of witness credibility

Plaintiff next contends that the ALJ failed to adequately evaluate the credibility of witness

6

testimony and also failed to adequately document any weight given to such testimony.

As with plaintiff's first argument, plaintiff's third argument was waived when plaintiff failed to raise it before the magistrate judge. Plaintiff's motion for judgment on the pleadings makes no mention of witness credibility determinations and "an unsuccessful party is not entitled as of right to de novo review . . . of an argument never seasonably raised before the magistrate." Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985, 990-991 (1st Cir. 1988).

There is good reason for this court to decline to consider plaintiff's novel arguments after completion of the magistrate's M&R. In the words of one court: "[s]ystemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and -- having received an unfavorable recommendation -- shift gears before the district judge." Id. at 991.

Even had these issues not been waived, plaintiff fails to show that any witness credibility determinations materially affected plaintiff's outcome. The ALJ considered the testimony of plaintiff and her guardian (Tr. at 22-23), and incorporated the testimony of plaintiff and her guardian in his decision. (Id.). Despite the ALJ's finding that "the child's subjective complaints are considered credible only to the extent they are supported by the evidence of record as summarized in the text of this decision," (Tr. at 27), there is no indication that the ALJ considered any testimony *not* credible.

In fact, the ALJ's written decision, supported by substantial evidence in the form of medical and school records available in the administrative record, supports a finding that plaintiff is no longer

7

disabled, even if full credence is given to both plaintiff and plaintiff's guardian's testimony. Although the ALJ should have described the weight he assigned to oral testimony in this case, the omission is not material and plaintiff's arguments for remand on this basis are not persuasive.

D.    Plaintiff's claim that the ALJ's decision contains an error that mandates remand

Plaintiff's next argument restates an argument considered and dismissed by the magistrate judge. In his final decision, the ALJ included language more applicable to an initial disability determination than to a benefits cessation determination. Because of this language, plaintiff suggests that the ALJ confused or conflated the two different legal standards and requests that the court remand the decision for clarification.

After reviewing the record and the briefs submitted by counsel, it is the opinion of this court that the ALJ's decision as a whole reveals that he considered and discussed every issue relevant to the benefits cessation determination, and did not confuse or conflate the standards with that of an initial disability determination.

Several instances in the record make it clear that the ALJ understood that the case in question concerned a cessation appeal, not an initial disability determination. In the transcript of the initial hearing, the ALJ noted that "it [the hearing] is a cessation case, all right?" (Tr. at 42). The final decision describes, in detail, the "specific steps to be considered by the Administrative Law Judge in deciding whether a disabled child's disability continues." (Tr. at 19). The decision goes on to discuss, also in great detail, the facts relevant to a cessation analysis. (Tr. at 23-26). Aside from the apparently misplaced language to which plaintiff refers, the ALJ's opinion consistently refers to and operates within the framework of a benefits cessation analysis.

8

E.    ALJ's analysis of plaintiff's intelligence test scores

In her final argument, plaintiff suggests that the ALJ erred by not reconciling disparate IQ scores across the administrative record and asks the court to determine whether she meets the criteria for section 112.05D (Mental Retardation) in defendant's listing of impairments.

Plaintiff's contention regarding the ALJ's analysis disregards large portions of the ALJ's written decision, which describe and evaluate plaintiff's intelligence test scores, academic record, and academic performance in detail. (Tr. at 20-22). Although the ALJ did not specifically address the disparity between the several IQ test scores, obtained over a period of several years, in the record, nonetheless his analysis shows that he considered plaintiff's intellectual capacity as it relates to possible impairment. His written decision includes substantial evidence to support his findings of medical improvement in plaintiff's condition.

Plaintiff also asks the court to determine whether she meets the criteria for section 112.05D of the Listing of Impairments. Section 112.05D is met when a child exhibits: "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function[.]" 20 C.F.R. Subpart P, Appendix One, Part B, section 112.05D. Because she could possibly meet the criteria for 112.05D, plaintiff argues, the ALJ committed legal error by not considering her lowest IQ test score, by failing to explain his assessment of her various test scores in his written decision, and by failing to explain why he did not consider the possibility that she might meet criteria for section 112.05D.

Plaintiff correctly notes that she was diagnosed with (mild) mental retardation on September 11, 1996, (Tr. at 449). At that time plaintiff was three years and one month old. (Tr. at 448). Plaintiff also notes that she received a score of 67 on a (verbal) IQ test in June, 2001, (Tr. at 410),

9

which potentially places her within the scope of the disability listed at section 112.05D of the Listing of Impairments. In June, 2001 plaintiff was seven years and ten months old.

Plaintiff's argument ignores the vast majority of more recent material in the record, drawing attention instead to the one six-year-old IQ test score that would potentially place plaintiff with reach of section 112.05D, *if* she meets the additional criteria of "additional and significant limitation of function."

Plaintiff's argument also ignores the criteria for assessing accuracy of intelligence test scores which reads:

IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, IQ test results tend to stabilize at age 16 . . . . IQ tests obtained between age 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years, when the tested IQ is 40 or above.

20 C.F.R. Subpart P, App. 1. Part B,112.05D. 10. Based on this criteria, plaintiff's 2001 IQ test scores can no longer be considered accurate.

Because the limited evidence upon which plaintiff relies to support her argument of possible mental retardation can no longer be considered accurate, and because the ALJ's findings are supported by substantial evidence as demonstrated by his detailed explanation of plaintiff's recent test scores and academic performance, this court finds that a remand for further consideration is not necessary.

## CONCLUSION

In accord with the foregoing, upon consideration of the parties' cross-motions for judgment on the pleadings and review of plaintiff's objections to the proposed findings and recommendations of the M&R, it is hereby ORDERED that: (1) the plaintiff's motion is DENIED; (2) the defendant's

10

motion is GRANTED and (3) the decision of the Commissioner denying further disability benefits is AFFIRMED. The clerk is directed to close the case.

SO ORDERED, this the 26 day of September, 2007.

LOUISE W. FLANAGAN
Chief United States District Judge

11